UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NATHANIEL R. BRAZILL,
        Plaintiff,

v.                                          Case No.: 2:10-cv-00458-JES-DNF

BETH E. COWART,
RONALD L. HOLMES,
G. MORRIS,
S. PARKER, and
J. LAWSON,
        Defendants.
_____/

## DEFENDANTS COWART, MORRIS AND PARKER MOTION FOR SUMMARY JUDGMENT

COMES NOW, DEFENDANTS, B. COWART, G. MORRIS and S. PARKER, by

and through undersigned counsel and files this Motion for Summary Judgment as to

Plaintiff's Amended Civil Rights Complaint pursuant to M.D. Fla. L.R. 3.01 and FED. R. CIV.

P. 56(a) and hereby respectfully request this honorable Court dismiss Plaintiff's Civil Right

Complaint.  As basis thereof, Defendants submit as follows:

Preliminary Case History

Plaintiff filed his Amended Civil Rights Complaint with five (5) causes of action [1]

brought against the above named Defendants:

> Claim I. COWART violated Plaintiff's First Amendment Right by
> "transferring [Plaintiff] from Desoto in retaliation for filing a civil complaint."
> Am. Compl. ¶ 44.

_____

[1] Claims V and VIII are directed at individuals not part of this motion.

Claim II. COWART violated Plaintiff's First Amendment Right by "placing him in administrative confinement in retaliation for filing a civil complaint." Am. Compl. ¶ 68.

Claim III. COWART violated Plaintiff's First Amendment Right by "having him transferred from Okeechobee in retaliation for filing a civil complaint against her." Am. Compl. ¶ 105.

Claim IV. COWART violated Plaintiff's First Amendment Right by "having the Plaintiff placed in administrative confinement while at Hardee in retaliation for filing a civil complaint." Am. Compl. ¶ 135.

Claim VI. MORRIS violated Plaintiff's First Amendment Right by "approving a special review classification and transfer of the Plaintiff from Desoto in retaliation for the Plaintiff filing a civil complaint against Defendant Cowart." Am. Compl. ¶ 171.

Claim VII. PARKER violated Plaintiff's First Amendment Right by "approving a special review classification and transfer of the Plaintiff from Okeechobee in retaliation for the Plaintiff filing a civil complaint against Defendant Cowart." Am. Compl. ¶ 195.

Plaintiff seeks declaratory relief, as well as damages against all named Defendants in both their individual and official capacities.

Memorandum of Law

Standard of Law

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ. for Bibb Co.,* 495 F.3d 1306, 1313 (11th Cir.2007) (citations omitted). An issue is "'genuine' [ ] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). If there exists a dispute as to any facts, all reasonable inferences are resolved in light most favorable to the nonmoving party, *Chapman v. AI Transp. et al.,* 229 F.3d 1012, 1023 (11th Cir.2000) (en banc) (citing to FED.R.CIV.P. 56(c)) . "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hickson Corp. v. Northern Crossarm Co., Inc.,* 257 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

Factual Allegations Presented

1. On September 11, 2009, Plaintiff filed a State civil action [2] that included COWART as a named defendant. *See* Am. Compl. at ¶ 15.

2. On November 5, 2009, Plaintiff "was placed in administrative confinement at the direction of Defendant Cowart." Am. Compl. at ¶ 21.

3. In response to Plaintiff's inquiry on why he was in administrative confinement, "Defendant Cowart responded in writing to the Plaintiff that he was 'under investigation.'" Am. Compl. at ¶ 23..

4. Plaintiff made a separate inquiry about his confinement to Mrs. Primus where she "provided the following written response: 'Pending transfer, due to pending litigation

---

[2] The State Civil Court action filed by Plaintiff is styled as: In the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, Case No: 2009 CA 003546, and named as defendants: W. McNeil, Secretary Department of Corrections; R. Joens, Warden at Desoto C.I.; R. Holmes, Assistant Warden at Desoto C.I.; B. Cowart, Correction Officer Colonel; and J. Rios, Correctional Officer at Desoto C.I.

against staff at DeSoto C.I.'"  Am. Compl. at ¶ 25.

5.  COWART responded to Plaintiff's written inquiry on November 17, 2009, stating "he was 'pending investigation.'"  Am. Compl. at ¶ 27.

6.  Plaintiff states, he was "held in administrative confinement for twenty-seven days." Am. Compl. at ¶ 28.

7.  On December 2, 2009, while in administrative confinement, Plaintiff was transferred from Desoto C.I. to Okeechobee C.I.  *See* Am. Compl. at ¶ 29.

8.  Plaintiff states that sometime "[b]etween November 5, 2009 and December 2, 2009, Defendant Morris approved a special review classification and transfer of the Plaintiff from Desoto due to the lawsuit filed by the Plaintiff against Defendant Cowart and Defendant Holmes."  Am. Compl. at ¶ 30.

9.  On December 3, 2009, Defendants in Plaintiff's State civil case filed a motion to dismiss "… asserting that the Plaintiff was no longer at Desoto …."  Am. Compl. at ¶ 31.

10. While Plaintiff was located at Okeechobee C.I., COWART accepted a transfer position to Okeechobee C.I. where Plaintiff was informed "that he was to be immediately transferred because Defendant Cowart did not want him at Okeechobee with her."  Am. Compl. at ¶ 34.

11. "On July 22, 2010, Defendant Parker approved a special review classification and transfer of the Plaintiff from Okeechobee due to the lawsuit filed by the Plaintiff against Defendant Cowart while at Desoto."  Am. Compl. at ¶ 35.

12. On July 27, 2010, Plaintiff was transferred from Okeechobee C.I. to Hardee C.I.

(arrived on August 3, 2010).  *See* Am. Compl. at ¶¶ 35, 36.

13. In September of 2010, Plaintiff's State court action "was summarily dismissed as moot primarily based on the Plaintiff no longer being at Desoto."  Am. Compl. at ¶ 38.

14. Plaintiff was placed in administrative confinement on January 3, 2011 "at the direction of Defendant Lawson based on Defendant Cowart being present at Hardee" where he remained until January 6, 2011.  Am. Compl. at ¶¶ 39, 40.

<u>Retaliatory Action</u>

Inmates do not have a protected liberty interest against being transferred from one institution to another.  *See Meachum v. Fano,* 427 U.S. 215, 224-25, 96 S.Ct. 2532 (1976). Correction officials however, may not transfer an inmate in retaliation for exercising their constitutional rights.  *See Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).  An actionable First Amendment claim based on retaliation is determined by three (3) elements: "(1) [Plaintiff] engaged in constitutionally protected conduct; (2) [Defendants'] retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct."  *Smith v. Florida Dept. of Corrections, et al.*, No. 11-13481 at 7 (11th Cir. Feb. 20, 2013) (unpublished opinion) (citing to *Bennett v. Hendrix*, 423 F.3d 1247, 1250-54, (11th Cir. 2005)); *see also Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  It is readily conceded the act of exercising one's right to access the courts is a constitutionally protected act. An adverse action occurs when "defendant's alleged[ ] retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Bennett* at 1254.  "Whether the [conduct] 'would likely

deter' presents an objective standard and a factual inquiry.'" *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008).  By contrast, a casual connection is a subjective inquiry that looks into the motivation of defendants to show they disciplined the plaintiff in retaliation for exercising his or her constitutional right.  *See Mosley* at 1278 (citing to *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (using the *Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle*, 429 U.S. 274 (1977) burden-shifting formula).  Notwithstanding the above, if Defendants show that the same action would have occurred in the absence of the protected activity, then Defendants are entitled to summary judgment as a matter of law.  *See Mosley* at 1278.

   Importantly, prison officials are "accorded latitude in the administration of prison affairs" and can purposely limit an inmate's "privileges and rights" thus, an inmate's First Amendment right is "not protected if affording protection would be inconsistent with an inmate's 'status as a prisoner or with the penological objectives of the correction system.'" *Mosley* at 1277 (internal citations omitted).

<u>Argument</u>

       Underlying all of Plaintiff claims is that he "is hesitant to file other civil complaints challenging his conditions of confinement where prison officials can transfer the Plaintiff with impunity to render such actions moot and the filing fee – which is not refundable – wasted."  Am. Compl. at ¶ 188.  It is thus Plaintiff's central contention that he was placed in administrative confinement, special reviewed and repeatedly transferred for only one reason, he filed a State civil action for which he was subject to alleged retaliation by the named Defendants.

Claim I

Plaintiff argues COWART violated his First Amendment Right by "transferring [Plaintiff] from Desoto in retaliation for filing a civil complaint." Am. Compl. at ¶ 44. Plaintiff states he was placed in administrative confinement on November 5, 2009, by "Desoto's Security Chief Correctional Officer Colonel Beth E. Cowart [ ] where I remained until December 2, 2009, when I was transferred from Desoto." Plaintiff contends COWART "knowingly, willfully, and maliciously with ill will, hatred, spite, reckless disregard, and a deliberate indifference, violate (*sic*) the Plaintiff's First Amendment right by transferring him from Desoto in retaliation for filing a civil complaint." Am. Compl. at ¶ 44.

The present record demonstrates the transfer of Plaintiff from Desoto C.I. was first recommended on November 5, 2009, by Plaintiff's Classification Officer, Mrs. Primus. EX 1. Classification Officer Primus states, "Due to inmate Brazill [ ] pending litigation against numerous staff at Desoto C.I. [ ], it is recommended that inmate Brazill be transferred to Okeechobee C.I. [ ] or Hendry C.I. [ ] as a Non-Negative Internal Security Threat (SU)." *Id*. The Classification Officer's transfer recommendation was reviewed and approved by the local (Desoto C.I.) Institutional Classification Team [hereinafter "ICT"]. *See* EX 2. The ICT is composed of three (3) staff members named Edwards, Holmes and Reed. *See id*. The ICT approved Plaintiff's "NON-NEGATIVE INTERNAL SECURITY TRANSFER (SU)" from Desoto C.I. *See* EX 3. The Desoto C.I. ICT transfer approval is forwarded to the regional State Classification Officer for review. MORRIS, as the State Classification Officer at that time, approved the recommendation and ICT approval for Plaintiff where he stated, "…

transfer approved for Okeechobee CI with alternate to Hendry CI for the safety of inmate Brazill and for the security of the institution as inmate Brazill apparently has pending litigation against staff at Desoto Annex and thus to avoid any conflict inmate is approved for transfer."  EX 2.  COWART affirms, "I was not involved with the decision or authority to transfer Brazill at any time."  EX 37.

On December 13, 2009, Plaintiff filed a Request for Administrative Remedy or Appeal grieving his transfer from Desoto C.I.  as a retaliatory action.  *See* EX 4.  In response, correction officials wrote, "You were given a transfer due to the lawsuit you filed against the department of corrections.  This was a 'non-negative transfer' and does not count against you.  The decision was made based upon what would be best for you, the department and the general public."  *Id*.

The present record plainly evidences that COWART, other than being named in the underlying state civil action, had absolutely no role in the recommendation or approval to transfer Plaintiff from Desoto C.I. on December 2, 2009.  Notably, COWART's position is a Colonel with Desoto C.I. security and not inmate classification.  *See* EX 5 ("…Desoto's Security Chief Correctional Officer [is] Colonel Beth E. Cowart …).  As indicated above, personnel associated with classifications are the ones involved in the recommendation and approval to transfer inmates, not security.  COWART specifically affirms "I do not now nor have I ever had the authority to transfer any inmate,"  EX. 37.  Thus, COWART played no role, subjectively or otherwise, in the transfer of Plaintiff from Desoto C.I. on or about December 2, 2009.

Wherefore, dismissal of Claim I is warranted.

Claim II

Plaintiff argues COWART violated his First Amendment Right by "placing him in administrative confinement in retaliation for filing a civil complaint." Am. Compl. at ¶ 68. Plaintiff states he was placed in administrative confinement on November 5, 2009 by "… Desoto's Security Chief Correctional Officer Colonel Beth E. Cowart [ ] where I remained until December 2, 2009, when I was transferred from Desoto." Ex 5. Plaintiff contends he was placed in administrative confinement "… in retaliation for me having filed a lawsuit against Col. Cowart and the administration at Desoto." *Id*. In Plaintiff's December 16, 2009, Request for Administrative Remedy or Appeal, (No: 0912-404-073) Plaintiff grieved his placement in administrative confinement that started on November 5, 2009. *Id*. Correction officials responded in writing on January 5, 2010, stating "You were placed in administrative confinement by Duncan, D. on November 5, 2009." *Id*. A report of administrative confinement dated, "11/05/2009 15:21," elaborates in pertinent part,

> ON THE ABOVE DATE INMATE BRAZILL WAS PLACED INTO
> CONFINEMENT STATUS PENDING INVESTIGATION PER
> INSTRUCTION FROM COLONEL COWART. INMATE OFFERED NO
> STATEMENT AND WAS GIVEN A PRECONFINEMENT PHYSICAL BY
> MEDICAL. INMATE WAS GIVEN THE OPPORTUNITY TO MAKE A
> NOTIFICATION PHONE CALL. CANTEEN CARD DEACTIVATED.

EX 6.

The report in Section I states: "PLACEMENT IN ADMINISTRATIVE CONFINEMENT (OR POSSIBLE PROTECTION NEED FROM SPECIAL MGT CASE)." *Id*. The disposition code is "Z05 = AC- INVEST/CHANGE OF

STATUS." *Id.*   The staff person making the entry is "DUNCAN, DAIQUIRI. D."
*Id.*

A review of Plaintiff's "DAILY RECORD OF SPECIAL HOUSING" indicates Plaintiff's special housing category is "AC" (administrative confinement) as opposed to "DC" (disciplinary confinement) with an initial placement date of "11-5-09." EX 7. On the back of Plaintiff's Daily Record under the heading, "Classification / Institutional Classification Team (ICT) / State Classification Office (SCO) Review" it shows under "Signature" the name, "Edwards" with a date reviewed, "11/6/09" and under "Remarks – Disposition" the entry, "Approved A/C Placement," listed as an "ICT" action. *Id.*

On January 10, 2010, Plaintiff filed a Request for Administrative Remedy or Appeal (No.1001-404-030) grieving his placement in administrative confinement as a retaliatory act where correction officials responded in writing and stated in part, "On November 5, 2009, you were placed into Administrative Confinement by Captain Duncan, at the direction of Colonel Cowart.  The Shift Supervisor is responsible for the placement of inmates into Administrative Confinement during his/her shift." EX 8.  A similar request was made by Plaintiff on January 17, 2010 and was accorded a matching written response. *See* EX 9.  On February 4, 2010, Plaintiff filed another Request for Administrative Remedy or Appeal (No.1002-404-029) but this time directed his grievance at COWART.  *See* EX 10.  On February 18, 2010, correction officials responded in writing and stated in part, "In your grievance you maintain that you were placed in confinement as retaliation for suing Colonel Cowart, and other staff officials. … You were confined pending investigation.  In this setting, confinement for reason of investigation is a permissible management procedure.  You fail to

demonstrate with credible, substantive, and actual evidence that malice, reprisal, and retaliation were the basis of your confinement." *Id.*

As presented above, Plaintiff's classification officer recommended his transfer on November 5, 2009, *see* EX 1-3, which is the exact date COWART directed Plaintiff to be placed in administrative confinement.  It is not only a very logical decision but certainly within any penological or management purpose that an inmate should be removed from open population and placed in administrative confinement (non-negative treatment) because the inmate is the subject of an investigation.  This is true, as here, when Plaintiff was under "investigation" based upon recommendation for transfer by his classification officer.  It was also true when Plaintiff arrived at Desoto C.I. from the SFRC (South Florida Reception Center) as he was initially placed in administrative confinement upon arrival, *see* EX 11, and on October 28, 2009 when he was "Transferred in from outside court."   EX 12. Administrative confinement is not unknown to Plaintiff.  He in fact, began his sentence in administrative confinement "… due to the high profile and notoriety of his case."  EX 13. Plaintiff has been placed in administrative confinement as opposed to disciplinary confinement: on December 11, 2001, "placed in AC … per Lt. B[ ], EX 14; on or about June 22, 2004, "… PLACED INTO ADMINISTRATIVE CONFINEMENT PENDING INVESTIGATION INTO THE DISCIPLINARY CHARGE …,"  EX 15; on November 3, 2004, "… pending D.R. [disciplinary review] hearing," EX 16; on February 15, 2005, "… pending: investigation By: I.G.," EX 17; on September 27, 2005, "Placed in conf. per OFC Mr. Wilkins," EX 18; on November 10, 2005, pending disciplinary charges, *see* EX 19; on May 31, 2006, " IM placed in A/C per LT. M[ ]," also pending a DR Hearing, (which was

changed Plaintiff's administrative confinement to disciplinary confinement on June 9, 2006),

EX 20; and finally, on August 8, 2006, "… placed in AC per Capt Bowden," (also changed

Plaintiff's administrative confinement to disciplinary confinement on August 8, 2006), EX

21.  Even with the presence of on-going disciplinary reviews or investigations, Plaintiff was

first placed in administrative confinement pending completion of a disciplinary review.  *See*

EX 20-22.

   Administrative confinement is designed to remove an inmate from open population

and as shown above, is done for a variety of penological reasons.  Even when Plaintiff was

transferred from Desoto C.I. to Okeechobee C.I., his "AC" status continued and as

documented, "Gained inmate into AC confinement per OIC under investigation – Capt.

Bryant …" EX 23.  Plaintiff's multiple attempts to create the impression that his

administrative confinement is somehow punishment or a disciplinary act being imposed to

deprive him of privileges is simply marginal at best.  *See* Am. Compl. at ¶¶ 90-101, 113-18,

135-39, 179-84 and 203-08.  A review of the Confinement Rules and Regulations, and other

signed documents, *see* EX 24, as well as, many of the written responses by correction

officials cited throughout this Motion fail to support Plaintiff's fanciful notion of punishment

while in administrative confinement.  *See Id*.

   The present record fails to indicate or demonstrate a scintilla of retaliatory animus by

COWART.  COWART was simply doing her job by directing that Plaintiff be placed in

administrative confinement pending the completion of review that ultimately led to his

transfer from Desoto C.I.  *See* EX 37 ("[p]lacing an inmate in Administrative Confinement is

normal protocol, in like circumstances, to remove the inmate from general population prior to

any transfer").  As presented, there are many safety and operational implications involved when an inmate becomes the subject matter of a transfer recommendation.  Penological and prudent decision making has to consider the safety concerns for all individuals, inmates and staff alike.  Thus, COWART did not subjectively discipline Plaintiff by placing him in administrative confinement on November 5, 2009.

Wherefore, dismissal of Claim II is warranted.


Claim III

Plaintiff argues COWART violated his First Amendment Right by "having him transferred from Okeechobee in retaliation for filing a civil complaint against her."  Am. Compl. ¶ 105. As argued throughout this entire Motion, COWART played no active part or role in any of Plaintiff's transfers.  *See Id*.  COWART cannot be subjectively held to commit an act that she did not do nor participate in.  The present record reflects that COWART did not recommend Plaintiff's transfer nor did she review or authorize it.  *See* EX 25, 26.  The reason for Plaintiff's transfer from Okeechobee C.I. is plainly evident given the present record and as argued further below in Claim VI, where Plaintiff accuses PARKER of the same retaliatory transfer.  Moreover, on August 9, 2010, when Plaintiff filed a Request for Administrative Remedy or Appeal, correction officials responded in writing in pertinent part, "Inmates are classified and may be transferred based [on numerous needs].  Neither length of time you were housed at another institution, or lack of a transfer request from you is necessary for you to be moved to another facility."  EX 27.  It is interesting to note, in its written response, correction official stated, "You are eligible for a good adjustment transfer.  If you choose,

you may request an Inmate Request for Good Adjustment Transfer Form (DC6-187) from

your housing officer." *Id*.  On February 26, 2012, Plaintiff submitted a Good Adjustment

Transfer Request and listed Okeechobee C.I. as his second choice.  *See* EX 28.  This being

the same Okeechobee C.I. sternly rejected in Plaintiff's Claim I, ¶ 53, as the place "… not

within proximity to the Plaintiff's family members and friends."  It is therefore amply clear

given this and the arguments presented below (Claim VII) that COWART, other than

receiving a promotion and being transferred to Okeechobee C.I., played no active or

subjective part in Plaintiff's transfer from Okeechobee C.I.

Wherefore, dismissal of Claim III is warranted.


Claim IV

Plaintiff argues COWART violated his First Amendment Right by "having the

Plaintiff placed in administrative confinement while at Hardee in retaliation for filing

a civil complaint."  Am. Compl. at ¶ 135.  On January 3, 2011, Colonel J. Lawson,

Hardee C.I., directed that Plaintiff be placed in administrative confinement "for

security reasons."  EX 29, 30.  Col. Lawson's order was based on Plaintiff's May 18,

2010 Special Review where Classification Officer Orton recommended Plaintiff be

special reviewed against personnel at or from Desoto CI.  *See* EX 31.  The Special

Review was approved by MORRIS.  It was only as part of her duties that COWART

visited Hardee C.I. commencing on January 3, 2011.  Col. Lawson was aware of

Plaintiff's Special Review and its application to COWART and placed Plaintiff in

administrative confinement for security reasons that only covered COWART's dates

for visit.  *See* EX 30.  Simply stated, with COWART visiting Hardee C.I., it was not

only Col. Lawson's professional judgment but Plaintiff's Special Review

classification that necessitated the removal of Plaintiff from open population rather

than chance an interaction between Plaintiff and COWART.  When COWART left

HARDEE C.I. Plaintiff was released and returned to his barracks.  *See* EX 32.

Plaintiff's own views support this position, "…Plaintiff was placed in administrative

confinement at the direction of Defendant Lawson based on Defendant Cowart being

present at Hardee."  Am. Compl. at ¶ 39.  COWART affirms "[o]ther than being

assigned to conduct an Operational Review at Hardee Correctional Institution; I had

nothing to do with placing Brazill in Administrative Confinement at Hardee

Correctional Institution."  EX 37.

On February 10, 2011, Plaintiff filed a Request for Administrative Remedy or

Appeal directed at his Special Review classification.  *See* EX 33.  Correction officials

responded in writing and stated in part, "'The purpose of the special review

designation is to ensure that the inmates are tracked and housed to minimize potential

conflict.'  State Classification felt that the circumstances of your law suit was so

serious that a special review was completed.  When Ms. Cowart arrived at Hardee

C.I. for the three days in January, you were placed in confinement for her safety as

well as your own.  Once she left, you were released from confinement, with no

negative effects."  *Id*.  Thus, COWART performed no act to either recommend, order

or authorize the placement of Plaintiff in administrative confinement while at Hardee

C.I.  Thus the present record fails to demonstrate any subjective awareness on the part

of COWART regarding Plaintiff's administrative confinement during the course of

her visit at Hardee C.I.  It is the plain and simple truth Plaintiff was placed in

administrative confinement because of his May 18, 2010 Special Review, which

without question, warrants such action.

Wherefore, dismissal of Claim IV is warranted.


Claim VI

Plaintiff argues MORRIS violated his First Amendment Right by "approving

a special review classification and transfer of the Plaintiff from Desoto in retaliation

for the Plaintiff filing a civil complaint against Defendant Cowart."  Am. Compl. ¶ at

171.  As presented above, MORRIS approved the transfer of Plaintiff on November

12, 2009 where he stated,

> TRANSFER APPROVED FOR OKEECHOBEE CI WITH
> ALTERNATE TO HENDRY CI. FOR THE SAFETY OF INMATE
> BRAZILL AND FOR THE SECURITY OF THE INSTITUTION AS
> INMATE BRAZILL APPARENTLY HAS PENDING LITIGATION
> AGAINST STAFF AT DESOTO ANNEX AND THUS TO AVOID ANY
> CONFLICT INMATE IS APPROVED FOR TRANSFER.

EX 2.

It should be noted MORRIS was a State Classification Officer who approved

Plaintiff's transfer only after recommendation by Plaintiff's Classification Officer and

approval by the Desoto C.I. Institutional Classification Team.  *See Id*.  MORRIS

affirmed, "I approved Nathaniel Brazill to be transferred from Desoto Annex to

Okeechobee C.I. for his safety and that of the institution."  EX 34.  Thus, MORRIS

under no set of circumstances approved the transfer of Plaintiff from Desoto C.I. in

retaliation for any act.

In specific regard to the May 18, 2010 Special Review determination of Plaintiff, it is obvious Plaintiff's Special Review determination occurred long after Plaintiff's December 2, 2009 transfer from Desoto C.I.  This is because Plaintiff's Special Review is not directed against any named individual but rather the entire Desoto C.I. itself, its Work Camp, Arcadia Road Prison and future Main Unit.  *See* EX 31.  This is so because "… these locations will have staff and be under the authority of the Desoto senior staff" who are current or former staff named in Plaintiff's lawsuit.  *Id*.  MORRIS "… approved a Special Review of Nathaniel Brazill and Desoto Annex since it was in best interest of both parties for Nathaniel Brazill to not be housed there."  EX 34.  Thus, MORRIS did not approve the Special Review of Plaintiff as any retaliatory action.

Wherefore, dismissal of Claim VI is warranted.


Claim VII

Plaintiff argues PARKER violated his First Amendment Right by "approving a special review classification and transfer of the Plaintiff from Okeechobee in retaliation for the Plaintiff filing a civil complaint against Defendant Cowart."  Am. Compl. at ¶ 195.  On July 23, 2010, Classification Officer Licata " … RECOMMENDED THAT INMATE BRAZILL SPECIAL REVIEWED TRANSFERRED FROM OKEECHOBEE CI" [because Plaintiff] "… WAS SPECIAL REVIEWED FROM THE STAFF AT DESOTO CI ON 5/27/10."  EX 25.  Licata's recommendation for special review transfer of Plaintiff was

reviewed by the Okeechobee Institutional Classification Team (Skipper, Provencher, Licata) where "THE TEAM RECOMMENDS A SPECIAL REVIEW TRANSFER BASED ON A SPECIAL REVIEW APPROVED BY THE SCO [State Classification Officer] ON AWO [Assistant Warden Okeechobee] B. COWART." *Id.*

The Special Review transfer was approved by PARKER on July 23, 2010. *See id.* Plaintiff's actual transfer was noticed by the "Final Transfer List" sent out to all Wardens on June 2, 2010, and "… authorized [Plainitff] for transfer on 08/03/2010…." EX 26.   The Final Transfer List also contained the following, "Admin. Alert: TRANSFER CONFLICT (T&R)," which indicates the presence of a conflict reflecting Plaintiff's Special Review Classification against the current and former staff of Desoto C.I. and the recent transfer of COWART to Okeechobee C.I.  *Id.*

As applied to this case, it should be fairly clear that Plaintiff's transfers were all first recommended by a classification officer, which was then reviewed by a three (3) member Institutional Classification Team who either approved or recommended Plaintiff's transfers. The Institutional Classification Team approval or recommendation was forwarded to the appropriate State Classification Officer who gave regional approval to transfer Plaintiff.  It is at this stage that the State Classification Officer's transfer approval is forwarded to Tallahassee, who then coordinates the actual transfer (generates a Final Transfer List) and provides the final authorization to transfer Plaintiff.  *See id.*  Plaintiff did file a Request for Administrative Remedy or Appeal on August 26, 2010, that was directed at his "retaliatory transfer from Okeechobee." EX 35.  Correction officials responded in writing and stated in part,

> One of the primary objectives of staff of the Department of Corrections is the placement of inmates in institutional assignments in order to minimize the risk to the general public and maintain order and security. Even if an inmate fits the minimum basic criteria for a particular transfer, that is not a guarantee that he will be recommended or approved for a transfer. Also, the Department strives to place inmates near the location of their family, however, due to facility profiles and bed space availability this is not always possible. The ultimate decision as to whether or not the inmate is assigned to a specific facility is based on a professional review made by staff in accordance with the rules of the Department.

EX 35.

Thus, PARKER simply approved the Special Review transfer of Plaintiff from Okeechobee C.I. to Hardee C.I. because Plaintiff had already been Special Reviewed against the current and former employees of Desoto. *See* EX 31. PARKER affirmed, "I was not involved in the special review that was initiated against inmate Brazill and Ms. Cowart. I approved the Institution Classification Team's recommendation to transfer subject to Hardee CI due to the special review." EX 36. Thus, PARKER approved Plaintiff's transfer because of the Special Review that was already issued and not for any retaliatory intent or purpose.

Wherefore, dismissal of Claim VII is warranted.


Ordinary Fitness and Deterrence

The question of whether or not a person of ordinary fitness would be deterred from engaging in constitutionally protected speech in a retaliatory action is an objective one. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). It nonetheless should be noted through the present record that Plaintiff is not objectively deterred from seeking access to the courts. As shown in this case, Plaintiff is well versed in legal matters and worked in a correctional institute law library. Plaintiff's present efforts objectively demonstrate an

absolute lack of deterrence on his part because he will vigorously pursue legal issues as they suit his need.  Plaintiff's claim that he "is hesitant to file other civil complaints challenging his conditions of confinement where prison officials can transfer the Plaintiff with impunity to render such actions moot and the filing fee – which is not refundable – wasted" (*see* Am. Compl. at ¶ 188) is at the heart of this action.  However, regardless of how one views Plaintiff's transfer be it coincidental or retaliatory or otherwise, the plain and simple fact that Plaintiff can always be transferred from an institution at any time regardless of the pendency of any state action.  It appears in this matter Plaintiff is more concerned about the loss of his filing fee than being deterred from seeking access to the courts.  Thus, it can be objectively viewed that any inmate standing in Plaintiff's shoes would not be deterred from seeking access to the courts.  Wherefore, dismissal of Plaintiff's Amended Complaint is warranted.

Official Capacity Claims

Plaintiff causes of action are directed at Defendants in their individual and official capacity. The Court has previously held in this case that the Eleventh Amendment bars monetary damages filed against Defendants in their official capacity.  *See* Doc. 38 at p.2.  Thus, Plaintiff's requested relief lacks legal support.

Wherefore, dismissal of Plaintiff's request for relief directed at COWART, MORRIS or PARKER in their official capacity is warranted.

Nominal and Punitive Damage Awards

As previously held by the Court in the present record, Plaintiff "concedes that he has not adequately stated a claim for punitive damages." Doc.27 at p.5; *see also* Doc. 22 at p. 11 (Plaintiff concedes "… punitive damages are barred in this case"). .

As to compensatory relief, Plaintiff first sought leave to supplement his Amended Complaint for the award of compensatory damages in the amount of $475.00 (against COWART and MORRIS). *See* Doc. 42. Defendants opposed Plaintiff's Motion. *See* Doc. 44 at Sec. VI, p.14. Plaintiff contends he should be compensated by this Court for the return of his State case filing fees because his State action was dismissed as moot when Plaintiff was transferred from Desoto C.I. It is Defendant's position that Plaintiff's request for compensatory relief is not properly before this Court. If Plaintiff wishes to seek costs from his State civil claim, he should address the proper State forum for that action. To rule otherwise, requires at minimum, a degree of inquiry into the basis of the State Court decision. Thus, Plaintiff may only seek relief for nominal damages. Nonetheless, Plaintiff's request for nominal damages fails because the present record fails to support the occurrence of any constitutional violation.

Wherefore, the denial of Plaintiff's request for nominal, compensatory and punitive damages is warranted.

GIVEN ALL THE ABOVE, the summary judgment evidence and present record fails to support the presence of any subjective intent that COWART, MORRIS or PARKER retaliated against Plaintiff for filing a State cause of action.

WHEREFORE, the Amended Complaint fails to demonstrate any casual connection between the aggrieved upon acts and any Constitutional violation of Plaintiff's First Amendment Rights.   Defendants COWART, MORRIS and PARKER hereby respectfully request the Court to grant their motion and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

s/ Kenneth V. Wilson
Kenneth V. Wilson
Assistant Attorney General
Florida Bar 0045212
Office of the Attorney General
501 East Kennedy Boulevard, Ste. 1100
Tampa, Florida 33602
T:  (813) 233-2880  F:  (813) 233-2886
Kenneth.Wilson@myfloridalegal.com
Counsel for Defendants, B. E. Cowart, G. Morris and S. Parker.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of March, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following persons set to receive electronic filings.  I further certify that I mailed the foregoing document and the notice of electronic filing on said date by first class mail to the following non-CM/ECF participants: Nathaniel R. Brazill, DC#W16443 Hardee Correctional Institution, 6901 State Road 62 Bowling Green, FL  33834-8976.

s/ Kenneth V. Wilson
Kenneth V. Wilson
Assistant Attorney General
Florida Bar 0045212