(4) Any restraint of a pregnant prisoner must be done in the least restrictive manner necessary in order to mitigate the possibility of adverse clinical consequences. Treating physicians may request that restraints not be used for documentable medical purposes; however, if the correctional officer, correctional institution employee, or other officer accompanying the pregnant prisoner determines that there is an extraordinary safety risk, the officer is authorized to apply restraints in the least restrictive manner necessary and in compliance with the restrictions set forth below.

(5) Unless there is a documentable extraordinary circumstance:

(a) Pregnant inmates will not be restrained with their hands behind their back nor will leg irons be utilized due to the possibility of a fall.

(b) Leg, ankle and waist restraints will not be used during the third trimester.

(6) When restraints are authorized as described herein, inmates will remain restrained during transport and at the medical facility unless removal of the restraints is required for medical reasons and then, except for emergency situations, only after the shift supervisor has been apprised of the situation and has given her/his approval to remove the restraints.

(7) Unarmed escort officers will maintain close supervision of pregnant inmates providing a custodial touch with the hand firmly grasped around the inmate's triceps or elbow when necessary to prevent falls.

(8) Pregnant inmates will not be restrained in any manner during labor, delivery, or postpartum recovery unless the warden makes an individualized determination that the prisoner presents an extraordinary circumstance. However, under no circumstances shall leg, ankle, or waist restraints be used on any prisoner who is in labor or delivery, as provided in Section 944.241(3), F.S.

(9) Staff utilizing restraints on a compliant pregnant inmate under extraordinary circumstances during labor, delivery, or postpartum recovery will document the application of restraints in the inmate's file on Form DC6-210, Incident Report. If the inmate is noncompliant, the use of restraints will be documented on Form DC6-230, Institutions Report of Force Used. In either case, such documentation shall be prepared within 10 days. Form DC6-230 is incorporated by reference in Rule 33-602.210, F.A.C.

*Rulemaking Authority 944.09, 944.241 FS. Law Implemented 944.241 FS. History–New 9-24-12.*

**33-602.220 Administrative Confinement.**

(1) Definitions.

(a) Administrative Confinement – the temporary removal of an inmate from the general inmate population in order to provide for security and safety until such time as more permanent inmate management processes can be concluded.

(b) Bureau of Braille and Talking Book Library – refers to the agency that provides books on tape, Braille books, and other auxiliary aids for individuals who, due to a disability are unable to read books in print.

(c) Central Office ADA Coordinator – refers to the employee responsible for implementing the provisions of Title I and Title II of the Americans with Disabilities Act and Section 504 of the 1973 Rehabilitation Act within the Department.

(d) Housing supervisor – the correctional officer sergeant, or above, who is in charge of the administrative confinement unit for a particular shift.

(e) Review – where used herein, refers to the evaluation of pertinent information or documentation concerning an inmate's confinement status to determine if changes or modifications are required or recommended.

(f) Visit – where used herein, refers to the official inspection and tour of a confinement unit by a staff member.

(g) Clinical health care personnel – where used herein, refers to a physician, clinical associate, nurse, Correctional Medical Technician Certified (CMTC), psychologist, psychology intern, psychology resident, or psychological specialist.

(h) Institutional Classification Team (ICT) – refers to the team consisting of the Warden or Assistant Warden, Classification Supervisor, a correctional officer chief, and other members as necessary when appointed by the warden or designated by rule. The ICT is responsible for making work, program, housing and inmate status decisions at a facility and for making other recommendations to the State Classification Office (SCO).

(i) State Classification Office (SCO) – refers to a staff member at the Central Office level who is responsible for the review of inmate classification decisions. Duties include approving or rejecting ICT recommendations.

(j) Security pen – refers to a specially designed flexible ink pen that bends under pressure and has a tip that retracts under excessive pressure.

(k) Senior correctional officer – refers to a staff member with the rank of correctional officer lieutenant or above.

(l) Special risk inmate – any inmate who has demonstrated behavior that is or could be harmful to him or herself.

(m) Institutional Classification Team Docket – refers to the official record of an Institutional Classification Team hea




EXHIBIT

H

(n) Offender Based Information System (OBIS) – refers to an electronic data system used by the Department of Corrections to record and retrieve offender information.

(o) Major rule violation – means any assault, battery or attempted assault or battery; any spoken or written threat towards any person; inciting or attempting to incite or participating in any riot, strike, mutinous act or disturbance; fighting; possession of weapons, ammunition, explosives or escape paraphernalia; and any escape or escape attempt.

(2) Procedures for Placement in Administrative Confinement.

(a) Administrative confinement is a temporary confinement status that may limit conditions and privileges as provided in subsection (5) as a means of promoting the security, order and effective management of the institution. Otherwise the treatment of inmates in administrative confinement shall be as near to that of the general population as assignment to administrative confinement shall permit. Any deviations shall be fully documented as set forth in the provisions of this rule.

(b) When a decision is made to place an inmate in administrative confinement, the reason for such placement shall be explained to the inmate and the inmate shall be given an opportunity to present verbal comments on the matter. The inmate shall also be allowed to submit a written statement. Prior to placing the inmate in administrative confinement, the inmate shall be given a pre-confinement health assessment to include a physical and mental health evaluation that shall be documented in the health care record. Inmates shall be weighed upon admission to administrative confinement, at least once a week while in administrative confinement, and upon leaving administrative confinement. The weight of the inmate shall be recorded on Form DC6-229, Daily Record of Special Housing. Form DC6-229 is incorporated by reference in Rule 33-601.800, F.A.C. When an official places an inmate in administrative confinement, this action shall be documented in the electronic classification contact log in OBIS. This entry shall fully state the circumstances surrounding and reasons for placing the inmate in administrative confinement and a summary of the inmate's comments. The reason must correspond with one of the criteria for placement provided in subsection (3) of this rule. This electronic entry shall be completed the same day the inmate is placed into confinement, and will establish the ICT 72-hour review appointment. Any written statements provided by the inmate shall be forwarded to the ICT for their consideration during the forthcoming 72-hour review.

(c) The Institutional Classification Team shall review inmates in administrative confinement within 72 hours. The ICT's findings and decision shall be documented in the electronic classification contact log in OBIS. The only exception to being reviewed within 72 hours is when the ICT cannot complete its review within the allotted timeframe due to a holiday. If the review cannot be completed within 72 hours, the action of the senior correctional officer shall be reviewed within 72 hours by the duty warden, documented on the Form DC6-229, Daily Record of Special Housing, and evaluated within 5 days by the ICT. Inmates placed into administrative confinement shall not be released from this status until approved by the ICT. The classification supervisor shall be responsible for ensuring that the ICT docket is prepared. The ICT Chairperson is responsible for scheduling the ICT hearing date and time. The ICT shall review inmates for release. During this review the ICT shall consider pending disciplinary hearings and other pending issues or actions. If an inmate has been held in administrative confinement pending a disciplinary hearing and the decision is not to impose disciplinary confinement as a part of the disciplinary action, the disciplinary team or hearing officer shall notify the confinement supervisor who shall coordinate the release of the inmate from administrative confinement. If the confinement supervisor discovers other pending issues or actions, the ICT shall be required to immediately review the case. In the event it is necessary to release an inmate from administrative confinement during weekends or holidays the duty warden is authorized to approve the release immediately.

(3) Reasons for Placement in Administrative Confinement with time limits. Placement of an inmate in administrative confinement is authorized for the following reasons:

(a) Disciplinary charges are pending and the inmate needs to be temporarily removed from the general inmate population in order to provide for security or safety until such time as the disciplinary hearing is held. A senior correctional officer or above shall have the authority to place an inmate in administrative confinement for this reason. The length of time spent in administrative confinement for this reason shall not exceed seven working days unless the ICT authorizes an extension of 5 working days. This extension shall be documented on Form DC6-229, Daily Record of Special Housing.

(b) Outside charges are pending against the inmate and the presence of the inmate in the general population would present a danger to the security or order of the institution. A senior correctional officer or above shall have the authority to place an inmate in administrative confinement for this reason. The length of time spent in administrative confinement for this reason shall not exceed 15 working days. The ICT shall be authorized to grant an extension of 5 working days. If it appears that an inmate should continue to be segregated from the general population beyond 20 working days, close management procedures shall be initiated pursuant to

Rule 33-601.800, F.A.C.

(c) Inmates shall be placed in administrative confinement pending review of the inmate's request for protection from other inmates, (Rule 33-602.221, F.A.C.). The inmate shall be placed in administrative confinement by a senior correctional officer when the inmate presents a signed written statement alleging that the inmate fears for his safety from other inmates, and that the inmate feels there is no other reasonable alternative open to him. A senior correctional officer shall place an inmate in administrative confinement, pending review for protective management, based on evidence that such a review is necessary and the senior correctional officer determines that no other reasonable alternative is available. The inmate shall be encouraged to provide information and otherwise cooperate with the investigation of the matter. The protective management process, including the ICT's action, shall be completed within 15 working days from the initial confinement of the inmate.

1. The Institutional Classification Team (ICT) shall complete an OBIS electronic classification contact log entry approving the inmate's continuation in confinement. This entry will initiate an appointment for an investigation to be conducted. The investigator shall enter the results of the investigation in the electronic classification contact log in OBIS; this entry will automatically schedule an ICT review appointment.

2. If the inmate submits a request for release in writing at any time during the ICT review or investigation process, the housing supervisor shall provide the inmate with a Form DC6-203, Protection Waiver/Appeal Decision. Form DC6-203 is hereby incorporated by reference. A copy of this form is available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01671. The effective date of the form is 1-19-03. The inmate shall complete Form DC6-203 and return it to the housing supervisor for submission to the ICT along with the inmate's written request.

3. Once the investigation is complete, the ICT shall interview the inmate to determine whether the inmate has a legitimate, verifiable need for protection. The ICT shall review all documentation available concerning the need for protection to include any written statements submitted by the inmate. The inmate's written request for release and the DC6-203 will also be reviewed. The following elements shall be considered in determining whether protective management is necessary:

    a. A record of having been assaulted;

    b. A reputation among the inmate population, attested to in writing by staff, as an informant or trial witness;

    c. Verified threats, verbal abuse, or harassment;

    d. A former criminal justice activity resulting in verified threats, verbal abuse, or harassment;

    e. A conviction of a crime repugnant to the inmate population;

    f. Reliable, confirmed evidence of sexual harassment;

    g. Other factors such as physical size, build and age producing a risk from the general inmate population.

4. The ICT shall make recommendations concerning protective management based on the facts within 15 working days from the date of initial confinement. The ICT's findings and recommendations shall be entered in the electronic classification contact log in OBIS; this entry will automatically schedule an SCO review appointment. Whether the ICT recommends protective management or not, the inmate shall remain in administrative confinement at that facility pending review by the SCO. All non-electronic related documentation shall be made available to the SCO by the ICT. The State Classification Office shall approve, disapprove or return for additional information the recommendation of the Institutional Classification Team.

5. The State Classification Office (SCO) shall determine within five working days whether protection is necessary based upon the investigation and any follow-up they deem appropriate. The SCO shall approve or disapprove placement of the inmate in protective management. The SCO's decision shall be documented in the electronic classification contact log in OBIS. If the SCO determines that a need for protection exists, they shall direct that the inmate shall be placed in a protective management unit or transferred to resolve the inmate's need for protection. If a decision is made to transfer the inmate for housing in a protective management unit or to resolve the inmate's need for protection at the inmate's current location, the inmate shall be kept in administrative confinement until the transfer is completed. Transfers for protection needs shall be effected within five working days. SCO members are authorized to approve transfers. If the SCO determines that protective management is not necessary, the inmate may appeal this decision directly to the Office of the Secretary pursuant to Rules 33-103.007 and 33-103.011, F.A.C. The inmate shall be notified of the SCO's decision by the ICT. At the time of notification, the inmate shall be asked if he wants to appeal the decision. The inmate's acknowledgement of being informed of the SCO denial and the inmate's decision on whether or not to appeal shall be documented on the electronically produced Notification of Protective Management Disapproval, Form DC6-137, and the electronic contact log. Form DC6-137 is hereby incorporated by reference. A copy is available from the Forms Control

Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref 01673. The effective date on the form is 1-19-03. The inmate shall remain in administrative confinement until the appeal process is complete.

6. Within three working days after an inmate has been either received at a protective management facility for the purpose of protective management or after an inmate already housed at a facility with a protective management unit has been approved for protective management by the SCO, a determination shall be made by the ICT as to appropriate housing. The ICT shall ensure that the housing supervisor assesses the inmate being placed into the protective management unit for his potential for risk to or from other inmates in the protective management unit. The inmate shall remain in administrative confinement until this assessment is made.

(d) Inmates who present a signed written statement alleging that they are in fear of staff and provide specific information to support this claim shall also be placed in administrative confinement. These cases shall be reported via e-mail to the Office of the Inspector General for review and possible investigation. After completion of the review and investigation, the inspector general shall submit the case to the ICT or SCO with recommendations for disposition. If the case is submitted to the ICT, the ICT shall docket the case for consideration no later than the next ICT meeting. If the case is submitted to the SCO, the SCO shall coordinate with the ICT regarding recommendations. The time frames listed in paragraph (e) below shall apply to inmates in administrative confinement due to alleged fear of staff.

(e) An investigation, evaluation for change of status or transfer is pending and the presence of the inmate in the general population might interfere with that investigation or present a danger to the inmate, other inmates, or to the security and order of the institution. An investigating officer shall have the authority to request that the senior correctional officer place the inmate in administrative confinement for this reason and the length of time spent in this status shall not exceed 15 working days unless one 5 working day extension is granted by the ICT. This extension shall be documented on the Daily Record of Special Housing, Form DC6-229. If it is necessary to continue the inmate's confinement beyond this first extension, written authorization must be obtained from the SCO for a 30 day extension. This authorization shall be attached to the Form DC6-229. The SCO shall have the authority to authorize one additional 30 day extension. Examples of circumstances for placing an inmate in administrative confinement for this reason include:

1. Pending an evaluation for placement in close management.
2. Special review against other inmates, disciplinary, program change or management transfer. Transfers for this reason shall be given priority.
3. Pending an investigation into allegations that the inmate is in fear of a staff member. The protection process outlined in paragraph (d) above shall be utilized for this purpose. Paragraph (c) above shall not apply.
4. Any other reason when the facts indicate that the inmate must be removed from the general inmate population for the safety of any inmate or group of inmates or for the security of the institution.

(f) When an inmate is received from another institution when classification staff is not available to review the inmate file and classify the inmate into general population, a senior correctional officer or above has the authority to place the inmate into administrative confinement. The length of time spent in administrative confinement for this reason shall not exceed two working days. If the initial review suggests that a further investigation is necessary prior to release, the inmate's status can be changed to pending investigation or other status.

(4) Administrative Confinement Facilities.

(a) The number of inmates housed in an administrative confinement cell shall not exceed the number of bunks in the cell. The only exception to this policy is during an emergency situation as declared by the warden or duty warden. The regional director of institutions and the emergency action center in central office shall be advised of the emergency. If the emergency situation exists in excess of 24 hours, the warden or duty warden must get specific written authorization from the regional director of institutions to continue to house inmates beyond the 24-hour period. Prior to placing inmates in the same cell, the inmates will be interviewed by the housing supervisor to ensure that none of the inmates constitute a threat to any of the others.

(b) All administrative confinement cells shall be equipped with toilet facilities and running water for drinking and other sanitary purposes. Water in the cell can be turned off when necessary due to misbehavior. In such event, the inmate occupant shall be furnished with an adequate supply of drinking water by other means to prevent dehydration. This action shall be documented on Form DC6-229, Daily Record of Special Housing.

(c) Prior to placement of an individual in an administrative confinement cell, it shall be thoroughly inspected to ensure that it is