under this rule only upon the approval of the warden or designee. In making this determination, the warden or designee shall consider the following:

1. The individual's criminal history as determined by an initial National Crime Information Center/Florida Crime Information Center (NCIC/FCIC) background check;

2. Whether the individual is a relative, friend, or victim of any inmate at the institution;

3. The individual's ability to understand and communicate in English;

4. Any other factor that may impact the individual's ability to safely and effectively supervise inmates participating in a public works program.

(b) Upon approval by the warden or designee, a non-department supervisor shall be required to complete a 32-hour orientation and training course before being assigned to supervise inmates.

(c) Non-department supervisors shall be required to submit annually to an NCIC/FCIC background check, upon which the warden or designee shall reevaluate the individual's eligibility to supervise based on the criteria set forth in paragraph (a) of this subsection.

(d) Upon re-approval by the warden subsequent to the annual background check and evaluation, a non-department supervisor shall be required to complete an annual refresher training course.

(e) The warden may suspend or revoke a non-department supervisor's authorization to supervise when an incident occurs or when the warden receives information indicating that the individual is unable or unwilling to safely and effectively supervise inmates participating in a public works program. Incidents and information that may subject a non-department supervisor to suspension or revocation include:

1. Criminal history or activity;

2. Failure to maintain required training;

3. Failure to ensure that inmates follow safety requirements, such as hazardous materials handling requirements, vision and hearing protection requirements, and sanitary practices;

4. Allowing inmates to use or handle tools and equipment for which they have not been trained;

5. Failure to inventory and account for tools and equipment;

6. Failure to maintain communication with the institution regarding the location and operations of outside work squads;

7. Failure to report inmate injuries and misconduct;

8. Permitting inmates to use commercial or business restrooms; and

9. Failure to adequately supervise the behavior of inmates based on the inmates' custody classification and the particular safety risks of the work assignment, and such failure to supervise results in injury, escape, escape attempt, loss or destruction of property, tools, or equipment, or inability of the squad to engage in or complete its assigned work.

(7) All inmates will be expected to carry out instructions as given by the non-Department of Corrections employee.

(8) The Department of Corrections is authorized to enter into agreements with any political subdivision to utilize medium and close custody inmates:

(a) When there are unmet labor needs existing for political subdivisions and the institution is not able to provide minimum or community custody inmates and the type of work and work location is conducive to armed supervision of inmates;

(b) When there exists an emergency which requires more inmates than available from the minimum or community custody inmate institutional complement.

*Rulemaking Authority 944.09, 946.40(1) FS. Law Implemented 944.09, 944.10(7), 946.002, 946.40(1) FS. History–New 6-20-84, Formerly 33-3.17, Amended 2-26-86, 10-31-86, 1-29-98, 8-13-98, Formerly 33-3.017, Amended 2-7-02, 12-28-04, 10-28-10.*

### 33-601.209 State Classification Office and Institutional Classification Teams.

(1) The inmate classification system is comprised of two primary operational components which have been established to provide uniformity and consistency in both the development and implementation of classification policies and procedures. These two components are the State Classification Office and the Institutional Classification Team. These components have Rulemaking Authority and responsibility relative to the operation and management of the inmate classification system.

(2) The State Classification Office shall be composed of a chairperson, a vice-chairperson and other members as designated by the Chief of Classification and Central Records. The State Classification Office (SCO) refers to a staff member at the central office level who is responsible for the review of inmate classification decisions. Duties include approving or rejecting Institutional

**EXHIBIT**



Classification team (ICT) recommendations.

(3) The Institutional Classification Team refers to the team consisting of the warden or assistant warden, classification supervisor, a correctional officer chief, and other members as necessary when appointed by the warden or designated by rule. The ICT is responsible for making work, program, housing and inmate status decisions at a facility and for making other recommendations to the State Classification Office (SCO).

*Rulemaking Authority 944.09 FS. Law Implemented 944.09, 944.17, 944.1905, 958.11 FS. History–New 9-19-00, Amended 4-1-04.*

### 33-601.210 Custody Classification.
(1) Facility Assignments.

(a) A mission description shall be prepared for each facility of the Department of Corrections to which an inmate can be assigned. The mission description shall be based upon such factors as staffing patterns, perimeter security, construction features, electronic monitoring capability, type of health services provided, available programs, and any other factors that may affect the security and safety of the staff, inmates, or the general public. The mission descriptions shall be used to aid in the assignment of inmates to facilities in a manner which will best enable the department to maintain security and order. Inmate evaluation and facility assignment shall be based upon such factors as nature and severity of offense, characteristics of sentence, criminal history, age, health status, and any other factor relating to the security and order of the institution or the security and safety of the general public. An inmate shall be assigned to a facility that can provide appropriate security and supervision, that can meet the health needs of the inmate as identified by the department's health services staff, and, to the extent possible, can meet the inmate's need for programs and is near the location of the inmate's family. The Secretary may modify the mission of any facility to meet changing needs in response to changes in population characteristics, or in the event of riot, emergency conditions or other circumstances affecting security and safety of the general public, staff, and inmates.

(b) Inmates who have been committed under the Youthful Offender Act shall not be placed at a non-youthful offender institution except under the following circumstances:

1. The youthful offender is convicted of a new crime that is a felony under the laws of this state;

2. The youthful offender becomes such a serious management or disciplinary problem as to render his assignment to the youthful offender program detrimental to the program and to other youthful offender inmates assigned thereto;

3. The youthful offender needs medical treatment, health services, or other specialized treatment otherwise not available at the youthful offender institution or facility;

4. The department determines that the youthful offender should be transferred outside of the state correctional system, as provided by law, for services not provided by the department; or

5. Bed space is not available in a designated community facility. In such case, the youthful offender shall be separated, insofar as is practicable, from other offenders.

(2) Custody Grade Classification.

(a) Each inmate shall be placed in one of the five custody grades: community, minimum, medium, close, or maximum.

(b) Information from all available sources shall be used to complete an automated custody classification questionnaire. The questionnaire shall reflect the degree of supervision appropriate for the inmate.

(c) The result of completing an automated questionnaire shall be a computer generated numerical score or status custody for the inmate. A status custody is the automatic placement into one of the five custody grades based upon an inmate's sentence, criminal history, time remaining to serve, and other classification factors reflected on the automated custody questionnaire.

(d) The custody grade resulting from an inmate's score may be modified if circumstances indicate the need for an exception. The specific reason for the modification shall be explained in the automated system. Reasons for increasing or decreasing the custody grade might, in appropriate cases, include one of the following comments with proper explanation:

1. Charge reduced as a result of plea bargaining.

2. Charge dropped as a result of plea bargaining.

3. Other active/inactive commitments.

4. Commitment includes mandatory or retained jurisdiction provisions.

5. Community and public interest concerns (i.e., judge's or prosecutor's recommendation, victim/victim family interest, legislative inquiry, law enforcement interest, executive inquiry, personal notoriety, case notoriety).

a. Family environment (no family ties, strong family ties, married/head of household, crime history in family, family desertion,