```
        UNITED STATES DISTRICT COURT
         MIDDLE DISTRICT OF FLORIDA
            FORT MYERS DIVISION
```

NATHANIEL R. BRAZILL,

              Plaintiff,

vs.                               Case No.  2:10-cv-458-FtM-29DNF

BETH E. COWART, G. MORRIS, S. PARKER,

              Defendants.
_____

**OPINION AND ORDER**

**I.  Status**

This matter comes before the Court upon review of the Motion for Summary Judgment (Doc. #71, Motion) filed on behalf of Defendants B. Cowart, G. Morris, and S. Parker and supporting exhibits (Doc. #71-1, Exhs. AG 001 to AG 037-2) including *inter alia*: memoranda and forms approving Plaintiff's institutional transfers; copies of Plaintiff's inmate grievances and responses thereto; daily logs concerning Plaintiff's placement on administrative confinement; and, affidavits from Glenn Morris, Steven Parker, and Bethyl Elaine Cowart.  After being granted several enlargements of time, Plaintiff filed a response in opposition to Defendants' Motion (Doc. #84, Response) and supporting exhibits (Doc. #84-1-#84-10, Exhs. A-J), including: interrogatory responses from Defendants Cowart, Morris, and Parker; a copy of the June 2009 clothing policy issued by Defendant Cowart that formed the basis for Plaintiff's 2009 state civil rights

action filed in the Second Judicial Circuit Court in Leon County, Florida; copies of certain policies promulgated by the Florida Department of Corrections; and, his own affidavit. This matter is ripe for review.

## II. Background

Plaintiff Nathaniel Brazill, an inmate in the custody of the Secretary of the Florida Department of Corrections, initiated this action by filing a *pro se* Civil Rights Complaint (Doc. #1) pursuant to 42 U.S.C. § 1983. Plaintiff is now proceeding on his Amended Complaint (Doc. #21, Amended Complaint) against Defendants in their official and individual capacities, alleging a First Amendment retaliation claim stemming from Plaintiff's transfer on two occasions to different institutions within the Department of Corrections and his placement in administrative confinement on two occasions allegedly in retaliation for filing a state civil rights action in the Leon County Circuit Court, challenging Defendant Cowart's dress code policy. See generally Amended Complaint; see also Pl's Exh. F. At the time the incidents began, Beth Cowart was the Chief of Security at Desoto Correctional Institution, but was later promoted to Assistant Warden at Okeechobee Correctional. Amended Complaint at 2-3. Defendants Morris and Parker were Regional State Classification Officers. Motion at 7-8, 18.

On August 1, 2011, Defendant Cowart, the only defendant who had received service of process, filed a motion to dismiss (Doc

#25). The Court entered an Order denying Defendant Cowart's motion to dismiss, but *sua sponte* dismissed Defendant Holmes on the basis that the Amended Complaint did not contain sufficient factual allegations establishing a causal connection between Defendant Holmes and Plaintiff's alleged retaliatory transfers, or administrative confinement. See Opinion and Order, Doc. #27. The Court noted that by separate order the United States Marshal would be directed to effect service on Defendants Morris, Parker, and Lawson. Service of process was executed on the Defendants Morris and Parker, but not on "J. Lawson." See generally docket; Doc. #80 (noting no person by the name "J. Lawson" ever worked at Hardee Correctional Institution).[1] After giving Plaintiff sufficient notice, on April 9, 2013, the Court *sua sponte* dismissed Defendant Lawson pursuant to Fed. R. Civ. P. 4(m). See Doc. #80. After a lengthy period of discovery, Defendants filed the instant Motion. Upon review of the record and applicable case law, the Court denies Defendants' Motion.

---

[1] It appears that the United States Marshal's Office was provided incorrect information about Defendant J. Lawson, which the Marshal forwarded the Court. Contrary to the April 9, 2013 Order noting that no J. Lawson ever worked at Hardee Correctional, the exhibits Defendants attach in support of their Motion clearly indicate that a Colonel "J. Lawson" at Hardee Correctional approved Plaintiff's placement in administrative confinement. Thus, while J. Lawson may no longer be employed at Hardee Correctional, a J. Lawson did at one time work at Hardee Correctional. Considering the April 9 Order contained this misinformation, the Court will vacate its April 9, 2013 Order dismissing Lawson pursuant to Fed. R. Civ. P. 4(m) by separate order.

## III. Material Facts

Plaintiff initiated a state civil rights action on September 11, 2009, in the Second Judicial Circuit Court in Leon County, Florida, against Ronald Holmes, Beth Cowart, and Jose M. Rios, in their official and individual capacities. Pl's Exh. F. The parties received service of process in October of 2009. Id. It is undisputed that approximately one month later, on November 5, 2009, a memorandum promulgated by Classification Officer Primus to the Institutional Classification Team ("ICT") recommended Plaintiff's transfer to Okeechobee Correctional or Hendry Correctional based on his "pending litigation against numerous staff" at DeSoto Correctional. AG. Exh. 001. The memorandum went to the ICT, which was compromised of Edwards, Holmes, and Reed, and the ICT approved Plaintiff's transfer "for the security of the institution." Exh. AG 2; see also Exh. AG 3. Thereafter, Defendant Morris, the State Classification Officer, approved the transfer. Defendant Morris's notes indicate: "TRANSFER APPROVED FOR OKEECHOBEE CI WITH ALTERNATE TO HENDRY CI. FOR THE SAFETY OF INMATE BRAZILL AND FOR THE SECURITY OF THE INSTITUTION AS INMATE BRAZILL APPARENTLY HAS PENDING LITIGATION AGAINST STAFF AT DESOTO ANNEX AND THUS TO AVOID ANY CONFLICT INMATE IS APPROVED FOR TRANSFER." Exh. AG 2. Plaintiff was transferred on December 2, 2009, from Desoto Correctional to Okeechobee Correctional. Thus, it is undisputed that Defendant Morris approved Plaintiff's

transfer in light of "pending litigation" for the "security" of the institution.

Facts remain in dispute regarding Defendant Cowart's involvement, or lack thereof, in Plaintiff's December 2, 2009 transfer. Defendant Cowart submits that she had no involvement in Plaintiff's transfer. Motion at 7-8; Exh. AG at 37, Cowart Aff. Plaintiff submits evidence showing that Defendant Cowart initiated discussions with Assistant Warden Holmes about "what could be [done]" because Plaintiff "had filed suit against the entire administrative staff" "so that every security discussion [sic] not be construed as retaliation." Pl's Exh. A at 2, ¶2.

It is undisputed that pursuant to Defendant Cowart's directive, Plaintiff was placed on administrative confinement[2] at DeSoto Correctional on November 5, 2009. AG Exh. 005-2, AG Exh. 006, AG Exh. 008-3. The reason(s) behind Plaintiff's placement in administrative confinement are disputed. Plaintiff alleges that he was placed in confinement by Defendant Cowart in retaliation for the filing of the civil lawsuit in the Leon County Circuit Court. See generally Amended Complaint; Pl's Exh. J, Aff. Brazill. Plaintiff avers he was told that he was placed in administrative confinement because he was "under investigation." Id.; see also

---

[2]Plaintiff submits that placement in administrative confinement results in the deprivation of the following privileges: visitation, telephone, radio, television, canteen, recreation, dayroom, and a daily shower.

Exh. AG 006. Defendant Cowart submits that Plaintiff was placed in administrative confinement pursuant to protocol pending an inmate's transfer. Motion at 11; see also Exh. AG 37-1, Aff. Cowart. Plaintiff, however, points out that when he was transferred from Okeechobee, he was not placed in administrative confinement pending his transfer. Response at 8 (citing Pl's Exh. J, Aff. Brazill at ¶14)

It is undisputed that Plaintiff remained in administrative confinement upon his transfer to Okeechobee through the Christmas and New Years holidays until January 13, 2010, for a total of twenty-seven days. Exh. AG at 23-1 (daily log). Correctional officials at Okeechobee Correctional continued Plaintiff's placement in administrative confinement apparently because that was his status when he was transferred from Desoto Correctional. Id. (noting that Okeechobee "gained inmate into AC confinement per OJC.").

On July 22, 2010, Defendant Cowart accepted a position at Okeechobee Correctional. Amended Complaint at 7; Pl's Exh. J, Aff. Brazill at ¶13; Motion at 14. On August 3, 2010, Plaintiff was transferred from Okeechobee to Hardee Correctional. Defendant Parker acknowledges that he approved the ICT's recommendation that Plaintiff be transferred to Hardee "due to the special review." Exh. AG 36-1. Plaintiff maintains that he was transferred from Okeechobee in retaliation for the lawsuit he previously filed

against Defendant Cowart because her employment position was transferred to Okeechobee. A form dated July 23, 2010, concerning Plaintiff's transfer from Okeechobee to Hardee Correctional states:

> I/M BRAZILL, NATHANIEL [] WAS SPECIAL REVIEWED FROM THE STAFF AT DESOTO CI ON 5/27/10. MS. BETH COWART WAS THE COLONEL AT DESOTO CI DURING THIS SPECIAL REVIEW & HAS BEEN PROMOTED TO ASSISTANT WARDEN AT OKEECHOBEE C.I. IT IS RECOMMENDED THAT INMATE BRAZILL BE SPECIAL REVIEWED TRANSFERRED FROM OKEECHOBEE CI. []
>
> THE [ICT] TEAM RECOMMENDS A SPECIAL REVIEW TRANSFER BASED ON A SPECIAL REVIEW APPROVED BY THE [STATE CLASSIFICATION OFFICER] ON [ASSISTANT WARDEN OKEECHOBEE] B. COWART
>
> ST TRANSFER APPROVED. . . . .

Exh. AG 25. Defendant Cowart submits that she did not have any role in Plaintiff's transfer from Okeechobee. Motion at 13-14. Plaintiff, however, refers to Cowart's interrogatory response in which Cowart states that when she learned Plaintiff was incarcerated at Okeechobee, she told the warden that Plaintiff was "special reviewed" against her. Response at 12 (citing Pl's Exh. A at 4-5) and Motion at 15 (response to inmate grievance saying "circumstances of your lawsuit so serious that a special review was completed" and Plaintiff was placed in confinement for Cowart's security, as well as his own); but see Motion at 17 (stating "special review is not directed against any named individual but rather the entire Desoto C.I. itself, its Work Camp, Arcadia Road Prison and future Main Unit.").

On January 3, 2011, while incarcerated at Hardee Correctional, "J. Lawson" authorized Plaintiff's placement in administrative

confinement. Exh. AG 029. Plaintiff remained in confinement until January 6, 2011. Exh. AG 32-1 to 32-2. Plaintiff was placed in administrative confinement because Defendant Cowart was visiting Hardee Correctional. Exh. AG at 33. A response to one of Plaintiff's inmate grievances explains that he was placed in administrative confinement while Cowart was visiting Hardee Correctional "for her safety as well as your own." Id. Disputing these facts, Plaintiff maintains that he was placed in administrative confinement in retaliation for filing the civil lawsuit in Leon County circuit court. Plaintiff further submits that Defendants have done nothing to explain the safety concerns underlying Plaintiff's placement in administrative confinement.

### IV. Applicable Law

**A. Standard of Review**

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a

genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217

(11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**B. First Amendment**

Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1968)(per curiam). While an inmate does not

have a constitutionally protected liberty interest against being transferred to a less agreeable prison, Moody v. Daggett, 429 U.S. 78, 99 (1976), prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials. Bridges v. Russell, 757 F.2d 1155, 1157 (11th Cir. 1985). Such retaliatory transfers violate an inmate's First Amendment rights. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. O'Bryant v. Finch, 637 F.2d 1207, 1212 (11th Cir. 2011)(internal quotations omitted); Moton v. Cowart, 631 F.3d 1337, 1341-42 (11th Cir. 2011). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." Moton, 631 F.3d at 1341 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). "The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." Smith v. Fla. Dep't of Corr., ____ F.3d _____, 2013 WL 1346779 (11th Cir. 2013)(citing Mosley, 532 F.3d at 1278).

-11-

## V.  Discussion

### A.  First Amendment Retaliation Claims

Defendants do not dispute that Plaintiff's filing of a civil case in the Leon County Circuit Court constitutes protected conduct under the First Amendment.  Motion at 1.  This Court agrees.  The record also confirms that Plaintiff suffered adverse consequences: he was transferred on two occasions to correctional facilities located further away from his family; and, on two occasions placed in administrative confinement instead of general population, one time for twenty-seven days that coincided with the Christmas and New Years holidays and another time for three days that coincided with Cowart's visit at the particular correctional facility.  The Court finds these incidents would deter a person of ordinary firmness from exercising his or her First Amendment rights.  Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005).  Questions of material fact remain as to causal connection between Plaintiff filing the civil action and these adverse consequences.

In support of Plaintiff's claim that his transfers and placement in administrative confinement were retaliatory, he submits his affidavit, answers to interrogatories, and refers to several internal memoranda and forms approving his transfer and administrative confinement, as set forth above, which indicate that the impetus behind his transfer and placement in administrative confinement was his civil action filed in the Leon County Circuit

Court. Viewing the evidence in the light most favorable to Plaintiff, he has sufficiently established that a reasonable jury could conclude that his civil action in Leon County was the motivating factor behind his transfers and placement in administrative confinement on two occasions. Not only does the record contain sufficient facts of personal participation as to each Defendant, but the record contains a question of material fact as to whether the Florida Department of Corrections had adopted a policy or procedure allowing for inmates to be transferred from their current place of incarceration when they filed lawsuits against correctional officials from that institution.

Defendants point to their own affidavits and some of the same internal memoranda and forms approving Plaintiff's transfers on December 2, 2009, and August 3, 2010, and his placement on administrative confinement on November 5, 2009, and January 3, 2011, arguing that Plaintiff was transferred and held in confinement because of "security concerns." Defendants also submit that Defendant Cowart had no role in approving either transfer, or Plaintiff's placement in administrative confinement on January 3, 2011. With regard to Plaintiff's placement in administrative confinement at Desoto Correctional on November 5, 209, Cowart argues that she was merely following protocol pending Plaintiff's transfer. Viewing the evidence in the light most favorable to Plaintiff, a reasonably jury could conclude that Cowart was

involved in Plaintiff's transfers, because after learning about Plaintiff's lawsuit she acknowledges she went to Assistant Warden Holmes to see "what could be done" since Plaintiff filed a lawsuit against herself, Holmes, and correctional officer Rios. Significantly, Defendants failed to show that Plaintiff would have been transferred or held in administrative confinement in the absence of filing the civil case in the Leon County Circuit Court. Consequently, the Court denies Defendants' Motion.

### B. Monetary Damages

Defendants submit that the Court has already held that the Eleventh Amendment bars monetary damages against Defendants in their official capacities. Motion at 20 (citing Doc. #38 at 2). Defendants argue that Plaintiff's requested relief against Defendants in their official capacities "lacks legal support." Id. Defendants further argue that Plaintiff is only entitled to nominal damages in this case. Id. at 21. Defendants point out that Plaintiff previously conceded that he did not adequately state a claim for punitive damages. Id. (citing Doc. 27 at 5; Doc. #22 at 11). Defendants further argue that Plaintiff's request for compensatory damages for the loss of his filing fee in the State court is not properly before this Court.

In Response, Plaintiff notes that the Court has previously held that Plaintiff's request for declaratory or injunctive relief against the Defendants in their official capacity is not barred by

the Eleventh Amendment. Response at 25 (citing Doc. #38 at 2). Plaintiff argues that the Eleventh Amendment does not prohibit monetary relief, including costs, ancillary to the prospective injunctive relief. Id. at 24-25. With regard to a request for punitive damages, Plaintiff states that the Court did not dismiss his claim for punitive damages and granted him leave to supplement his Amended Complaint to state a claim for punitive damages. Id. (citing Doc. #61). With regard to compensatory damages, Plaintiff argues that a jury could reasonably conclude that his loss of the filing fee and processor server fee is an injury directly attributable to Defendants' violation of his First Amendment right because his State action was dismissed as moot due to Plaintiff no longer being incarcerated at Desoto Correctional. Id. at 26.

The Amended Complaint seeks "any relief deemed just and proper by the Court," and specifically seeks declaratory relief, and nominal and punitive damages. Amended Complaint at 35-36. The Court previously granted Plaintiff's motion to supplement to include a claim of compensatory damages, explaining that Plaintiff's request for "any relief deemed just and proper" includes a request for compensatory damages. See Doc. #61; see also Williams v. Brown, 342 F. App'x 429, 436 (11th Cir. 2009)(the court must liberally construe requests for damages in *pro se* complaints). The Court also previously construed the Amended Complaint to seek a request for injunctive relief, i.e. no further

transfers or detentions in confinement when Defendant Cowart is present at Plaintiff's place of confinement. <u>See</u> Doc. #38. Plaintiff may seek monetary damages against Defendants in their individual capacities, including nominal, compensatory, and punitive damages. <u>See generally</u> <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985). Whether Plaintiff is entitled to punitive damages is a question for the jury. <u>Smith v. Wade</u>, 461 U.S. 30 (1983)(a jury will be permitted to award punitive damages upon a showing of reckless or callous indifference to federally protected rights, as well as when motived by evil motive or intent); <u>Fields v. Corizon Health, Inc.</u>, 490 F. App'x 174, 186 (11th Cir. 2012)(discussing jury instruction on punitive damages). Consequently, Defendants request that the Court deny Plaintiff's request for nominal, compensatory, and punitive damages is denied.

ACCORDINGLY, it is hereby

**ORDERED**:

Defendants' Motion for Summary Judgment (Doc. #71) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, on this __14th__ day of June, 2013.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record